[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11625

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NADYA IVETTE DIAZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:17-cr-00038-MLB-WEJ-2

_____

Before WILSON, JILL PRYOR, and BRASHER, Circuit Judges.

WILSON, Circuit Judge:

Defendant-Appellant Nadya Diaz appeals her two convictions: conspiracy to allow a convicted felon to illegally possess a firearm and aiding and abetting a convicted felon to possess a firearm. On appeal, Diaz only challenges the district court's decision to not give her requested jury instruction about the Second Amendment. We find that the instructions the jury received adequately outlined the elements of the crimes Diaz was charged with and the decision to not give the instruction did not hinder Diaz's ability to mount a defense. Therefore, we **affirm**.

## I.  Background

Diaz lived with Michael Barr, who went by the aliases "Carlos Fonseca" and "Mike Diaz."[1] In the summer of 2017, an off-duty police officer who shoed horses for Barr and Diaz realized that "Carlos Fonseca" was Michael Barr—a convicted felon with an active warrant for his arrest. When police came to Barr's farm to arrest him, they saw ammunition and firearms in plain view. Police obtained a valid search warrant and later searched the residence. The police seized nine firearms, which included six legally purchased by Diaz. In October 2017, police executed a separate search warrant on a storage unit where police found another gun Diaz purchased.

---

[1] This opinion refers to Michael Barr as "Barr" and Nadya Diaz as "Diaz." It does not use any of Barr's aliases.

Diaz has purchased about fifty guns throughout her life. When purchasing guns, Diaz had to fill out an ATF Firearms Transaction Record, commonly known as the 4473 form. These forms ask questions related to prohibitions on firearm ownership. Having filled out numerous 4473 forms, Diaz knew that people who have been convicted of felonies cannot possess firearms. Photos and videos presented as evidence at trial showed Diaz with Barr holding or using guns together, including a gun recovered by police.

A grand jury indicted Diaz and Barr in 2018.[2] Diaz was charged with one count of conspiracy to commit an offense against the United States for assisting a convicted felon to possess a firearm, 18 U.S.C. §§ 371, 922(g)(1) (Count 1); two counts of aiding and abetting a felon to possess a firearm, 18 U.S.C. §§ 2, 922(g)(1) (Counts 2 and 8); and one count of aiding and abetting use of identification of another person in connection with any unlawful activity that constitutes a felony under state law, 18 U.S.C. §§ 2, 1028(a)(7) (Count 9). Counts 2 and 9 were dismissed before and during trial.

Before trial, the government moved to prevent Diaz from bringing up the Second Amendment when arguing or questioning

---

[2] Barr pled guilty to the following charges before Diaz's trial: Count One (conspiracy to violate 18 U.S.C. § 922(g)(1)); Count Two (felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (aided and abetted by Diaz)); Count Three (felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)); and Count Four (possession of a firearm silencer not identified by a serial number in violation of 26 U.S.C. § 5861(i)).

4                          Opinion of the Court                     21-11625

witnesses, which the district court granted.[3]   Neither party contested that Diaz could lawfully purchase and possess firearms. Diaz asked for the following Second Amendment jury instruction at the charge conference:

> Under the Second Amendment to the United States Constitution, a person has the right "to keep and bear arms," that is, to own, to possess, and to carry firearms. This right is not without limit. Therefore, certain people, like felons, do not have the right to own, possess, or carry firearms.
>
> Because Ms. Diaz is not a felon, unlike Mr. Barr, she is not legally prohibited from owning or possessing a firearm. As such, under the Second Amendment to the United States Constitution, she has the right to own, possess, and to carry firearms, so long as it is not unusual or dangerous. Thus, in determining whether she purposefully aided and abetted Mr. Barr's illegal possession, it is not sufficient that she bought, maintained, kept, possessed, or carried firearms. In order to find Ms. Diaz guilty of aiding and abetting Mr. Barr, you must find beyond a reasonable doubt that she

_____

[3] Diaz's attorneys, however, were allowed to and did mention that Diaz could lawfully own guns during both opening and closing statements. Opening statements noted that "[t]here's no question that Nadya could lawfully possess guns. She can buy them. She can have them in her home. She can carry them on her person." Closing statements reiterated that "[s]he's allowed to have guns."

> committed some additional act beyond exercising her Second Amendment rights and that she committed that act for the purpose of aiding, assisting, encouraging or facilitating Mr. Barr's illegal possession.

Dist. Ct. Doc. 257 at 26. The district court denied the request because the Second Amendment was not relevant to her charges. Instead, the district court provided jury instructions regarding conspiracy, aiding and abetting, and 18 U.S.C. § 922(g)(1). The jury convicted Diaz on the remaining counts.

After being convicted, Diaz moved for a new trial, arguing that not giving the proposed Second Amendment instruction was error. When denying the motion for a new trial, the district court explained that the conduct Diaz was found guilty of—conspiracy and aiding and abetting—was not protected by the Second Amendment. The district court sentenced Diaz to 57 months in prison for each count, which would run concurrently,[4] followed by three years of supervised release.

On appeal, Diaz only challenges whether the district court abused its discretion by not giving the Second Amendment jury instruction she requested.

## II.    Standard of Review

We review the district court's refusal to give a proposed jury instruction for an abuse of discretion. *United States v. Hill*, 643 F.3d

---

[4] Diaz is set to be released from prison in December 2023.

6                    Opinion of the Court                    21-11625

807, 850 (11th Cir. 2011).  Generally, a refusal to give a requested instruction is an abuse of discretion if: "'(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend [herself].'" *Id.* (quoting *United States v. Jordan*, 582 F.3d 1239, 1247–48 (11th Cir. 2009) (per curiam)).

### III.    Applicable Law

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  The Second and Fourteenth Amendments protect an individual right to keep and bear arms in the home.  *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2125–26 (2022).  However, the right to bear arms is not unlimited.  *See id.*; *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008).  Prohibitions on possession of firearms by felons are constitutional.  *Heller*, 554 U.S. at 626.  "[S]tatutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (per curiam).

Anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" is prohibited from possessing a firearm or ammunition.  18 U.S.C. § 922(g)(1).  To violate this statute, the person must know they are

barred from possessing a firearm or ammunition.  *See Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019).

People who aid or abet federal offenses can face the same punishment as principals.  *See* 18 U.S.C. § 2(a).  A person who aids and abets "(1) takes an affirmative act in furtherance of [the] offense, (2) with the intent of facilitating the offense's completion." *Rosemond v. United States*, 572 U.S. 65, 71 (2014).  An individual's knowledge of the criminal circumstances is key to finding that person guilty of aiding and abetting.  *Id.* at 77.  Similarly, knowledge is a key element of a conspiracy conviction.  To find a defendant guilty of conspiracy requires the government to prove: (1) the existence of a conspiracy; (2) the defendant knew about the conspiracy; and (3) with knowledge, the defendant voluntarily joined the conspiracy.  *United States v. Abovyan*, 988 F.3d 1288, 1302 (11th Cir. 2021); *see also* 18 U.S.C. § 371.

## IV.    Analysis

The district court did not abuse its discretion when it denied Diaz's proposed Second Amendment jury instruction.  Regardless of whether this proposed instruction properly characterized the Second Amendment, failing to give the proposed instruction did not impact Diaz's ability to defend herself.

First, the jury instructions provided at trial adequately identified the specific conduct required to convict Diaz.  At trial, one instruction explained the elements required to convict someone of conspiracy.  Another instruction explained the elements of aiding and abetting.  The instructions also included a definition of "overt

act," which described how "[a]n 'overt act' is any transaction or event, even one that may be entirely innocent when viewed alone, that a conspirator commits to accomplish some object of the conspiracy." Diaz feared that the extent of her Second Amendment rights would be unclear without her proposed instruction. Despite her fears, the given instructions identified the exact elements necessary for her actions to constitute conspiracy or aiding and abetting and made it clear that mere lawful possession of firearms was not enough to convict Diaz. The opening and closing statements reiterated that there was no question as to Diaz's lawful gun ownership. Here, the instructions provided at trial adequately ensured the jury could draw the line between prohibited and protected conduct.

Further, failing to provide Diaz's proposed instruction did not impair her ability to defend herself. At trial, the legality of Diaz purchasing or possessing guns was not at issue. Diaz's defense focused on knowledge. Because Diaz had filled out so many 4473 forms, she could not say she lacked knowledge that felons cannot have firearms. Instead, she took the stand to testify that she lacked an awareness of Barr's status as a felon. We must evaluate whether the subject matter of the proposed instruction was so crucial that failing to give the instruction seriously hindered Diaz's ability to defend herself. *See Hill*, 643 F.3d at 850. Not receiving a Second Amendment jury instruction did not impact her ability to argue that she was unaware of Barr's status as a felon. Diaz's proposed instruction would not improve her defense or make it more

compelling because the Second Amendment was not relevant to any element of the charges against her under these facts.

Finally, Diaz's circumstances were not analogous to a person lawfully owning a gun and merely cohabitating with someone convicted of a felony. Diaz references the "risk that felon dispossession statutes, when combined with laws regarding accomplice liability, may be misused to subject law-abiding cohabitants to liability simply for possessing a weapon in the home." *United States v. Huet*, 665 F.3d 588, 601 (3d Cir. 2012), *abrogated on other grounds by United States v. De Castro*, 49 F.4th 836, 845 (3d Cir. 2022). We recognize this risk but emphasize that is not comparable to Diaz's situation. At trial, the government presented evidence—including a video of Barr shooting one gun with Diaz's voice in the background—supporting its argument that Diaz knew Barr was using the guns. This decision does not suggest that mere cohabitation with a person convicted of a felony can constitute conspiracy or aiding and abetting.

Thus, the district court did not abuse its discretion by failing to deliver Diaz's proposed Second Amendment jury instruction.

**AFFIRMED.**